**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

SCOTT GRAHAM,

Plaintiff,

-v-

DELAWARE-CHENANGO-MADISON-OTSEGO BOARD OF COOPERATIVE EDUCATIONAL SERVICES and DELAWARE-CHENANGO-MADISON-OTSEGO BOARD OF COOPERATIVE EDUCATIONAL SERVICES BOARD OF EDUCATION,

Defendants.

3:24-cv-495
(ECC/ML)

Carlo Alexandre C. de Oliveira, Esq., *for Plaintiff*
Charles C. Spagnoli, Esq., *for Defendants*

**Hon. Elizabeth C. Coombe, U.S. District Judge:**

**MEMORANDUM-DECISION and ORDER**

## I. INTRODUCTION

On April 10, 2024, Plaintiff Scott Graham filed this action against the Delaware-Chenango-Madison-Otsego Board of Cooperative Educational Services (BOCES) and the Delaware-Chenango-Madison-Otsego Board of Cooperative Educational Services Board of Education (Board of Education) (collectively Defendants). *See generally* Dkt. No. 1. Plaintiff maintains that Defendants retaliated against him in violation of Title V of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C § 794, and Section 75-b of the New York Civil Service Law. *Id.* at ¶¶ 131–57. He seeks declaratory and compensatory relief, as well as other damages. *Id.* at ¶ 158.

On February 6, 2026, Defendants moved for summary judgment on Plaintiff's claims, also seeking to dismiss Plaintiff's claims for any lost wages or benefits because of a failure to mitigate

damages and limit Plaintiff's recovery for lost earnings and benefits pursuant to the after-acquired evidence doctrine. Dkt. No. 133. On February 13, 2026, Plaintiff moved for summary judgment on all of his claims. Dkt. No. 135. The motions are fully briefed. *See* Dkt. Nos. 138, 139, 142, 143, 146.

## II. BACKGROUND[1]

On January 3, 2023, Defendants hired Plaintiff as an at-will, probationary employee to be the building leader for the Pole Campus, with the title of Assistant Director for Instruction. Dkt. No. 133-1 ¶¶ 6, 7; Dkt. No. 138 ¶ 2. Approximately eight months later, the Board of Education unanimously approved Plaintiff's appointment as the Principal of the Pole Campus on September 6, 2023. Dkt. No. 138 ¶ 2. Director of Special Education Sara Stafford and Director of Career,

[1] The following facts are drawn from Defendants' Statement of Material Facts as to Which There Exists No Genuine Dispute, Dkt. No. 133-31, Plaintiff's Response to Defendants' Statement of Material Facts Pursuant to Local Rule 7.1(a)(3), Dkt. No. 139-1, Defendants' Reply to Plaintiff's Response to Statement of Material Facts as to Which There Exists No Genuine Dispute, Dkt. No. 146-1, Plaintiff's Amended Statement of Material Facts, Dkt. No. 138, and Defendants' Response to Plaintiff's Statement of Material Facts, Dkt. No. 142-11, to the extent those facts are well-supported by pinpoint citations to the record, and the exhibits the parties have submitted. Disputed facts are noted. The facts are construed in the light most favorable to the non-moving party on each party's motion for summary judgment. *Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007). The Court will only consider facts that are relevant to the case at hand.

The Court also notes that if any "statements in support of summary judgment are either argumentative in nature or lacking in specificity and personal knowledge, the statements will not be considered to have the same effect of sworn testimony for purposes of a summary judgment motion." *Howlan v. USIS Comm. Servs., Inc.*, No. 10-cv-1094 (MAD/ATB), 2011 WL 2975515, at *4 (N.D.N.Y. July 21, 2011) (citing *Murray v. Palmer*, No. 03-cv-1010 (DNH/GLS), 2008 WL 2522324, at *3 (N.D.N.Y. June 20, 2008)). "Moreover, if the facts that movant asserts are either (i) not based on personal knowledge through an affidavit, deposition or documentary evidence, or (ii) 'conclusory facts' which are not really facts at all, but rather conclusions of law, the statements, 'will not be fatal to a civil action.'" *Id.* (quoting *Rivera v. Nat'l R.R. Corp.*, 152 F.R.D. 479, 484 (S.D.N.Y. 1993)).

Furthermore, the Court reminds the parties that "a statement of material facts is not the place for the assertion of legal arguments." *Stone v. Town of Cicero*, No. 21-cv-1363 (GTS/TWD), 2024 WL 1219691, at *6 n.2 (N.D.N.Y. Mar. 20, 2024).

Technology, and Education Jennifer Waite (now known as Jennifer Lawrence) directly supervised Plaintiff during his employment. Dkt. No. 133-1 ¶ 12. No formal evaluation of Plaintiff was performed during his employment. *Id.* at ¶ 14; Dkt. No. 139-1 ¶ 14. In addition, Plaintiff never received a counsel memorandum, and before December 13, 2023, there was no record of discipline in his employment file. Dkt. No. 138 ¶¶ 25, 26.

One of Plaintiff's job responsibilities was to investigate the circumstances and causes of staff injuries and to complete the "investigation report" section of accident reports submitted by staff members. Dkt. No. 133-1 ¶ 16. Some hard copies of the accident reports were placed in Plaintiff's mailbox or on his desk. *Id.* at ¶ 17. In certain circumstances, it took Plaintiff approximately one hour to complete the investigation report portion of an accident report. *Id.* at ¶ 18. The reports were delayed by varying amounts of time. *Id.* at ¶ 20. On November 27, 2023, Plaintiff met with Ms. Stafford and Ms. Waite and agreed that a goal for growth would be to improve his timeliness in submitting the investigation portions of accident reports. *Id.* at ¶ 22. Defendants assert that one aspect of Plaintiff's alleged poor work performance was that he did not submit the investigation portions of accident reports in a timely fashion, meaning within approximately 24 hours of a staff member's submission of an accident report to Plaintiff. *Id.* at ¶¶ 19, 20. Plaintiff asserts that delays occurred because of a variety of issues, including, but not limited to, the need to interview employees, employee absence, and supervisory review. Dkt. No. 138 ¶ 94. In addition, District Superintendent Michael Rullo stated that he was unaware of any policy assigning accident-reporting responsibilities to principals beyond the handbook requirements that assigned the responsibility directly to the staff involved in the accident. *Id.* at ¶ 97.

Defendants assert that Plaintiff was also responsible for preparing a building-level emergency response plan (BLERP) for the Pole Campus that was to be in place by September 1, 2023, pursuant to requirements of the New York State Education Department. Dkt. No. 133-1 ¶¶ 23, 24. Plaintiff asserts that a BLERP was already in place, and that it needed to be updated and submitted no later than October 1, 2023. Dkt. No. 139-1 ¶ 24. Plaintiff also asserts that BLERP preparation is not a responsibility solely for one individual, but rather a team under New York State Education Law, and that BOCES policy assigned the BLERP completion responsibility to the "Assistant Superintendent for Management Services." *Id.* at ¶ 23. While Defendant argues that Plaintiff did not complete the BLERP by the start of classes in September 2023, Plaintiff argues that the deadline for him to update his portion of the BLERP was not due until Monday, September 18, 2023, which was subsequently extended to September 19, 2023. *Compare* Dkt. No. 133-1 ¶ 26 *with* Dkt. No. 139-1 ¶ 26. Defendants assert that Ms. Waite and Ms. Stafford communicated with Plaintiff on multiple occasions regarding whether the BLERP was completed, including on September 8, 12, 13, 15, and 18 of 2023. Dkt. No. 133-1 ¶¶ 27–38.

On August 25, 2023, Plaintiff requested vacation time beginning on September 19, 2023. Dkt. No. 139-1 ¶ 36. Plaintiff left for vacation beginning on September 19, 2023; Defendants assert that the BLERP was not yet completed, and Plaintiff asserts that he completed his portion of the BLERP on September 15, 2023, before he left for his vacation. *Compare* Dkt. No. 133-1 ¶¶ 32, 39 *with* Dkt. No. 139-1 ¶ 39. After Plaintiff returned from his vacation, he met with Assistant Superintendent Rinaldo, Ms. Stafford, and Ms. Waite on September 27, 2023, and they discussed various topics; Defendants assert that one of the topics was Plaintiff's delay in completing the BLERP. Dkt. No. 133-1 ¶ 40. According to Plaintiff, Ms. Rinaldo stated that Plaintiff's leave of absence was granted and no discipline resulted from Plaintiff's request for

vacation. Dkt. No. 138 ¶ 66. Defendants assert that Plaintiff did not complete the BLERP until September 29, 2023, a month after it was supposed to be in place according to the New York State Education Department. Dkt. No. 133-1 ¶¶ 43, 45.

Defendants assert, and Plaintiff denies, a variety of complaints about Plaintiff's job performance, including that Plaintiff was observed "acting in a way that threatened to escalate a student's behavior," that Mr. Rullo "felt"[2] that Plaintiff was "generally unprepared" when handling a June 2023 graduation ceremony, that Plaintiff was poor at delegating tasks, acted in an "immature manner," delayed in checking references and scheduling candidate interviews, and improperly "mixed" a special education class with a non-special-education class. *Id.* at ¶¶ 46, 48, 49, 51, 53, 55. Plaintiff asserts that these complaints were never documented, that he was never disciplined for this alleged conduct, and that there was no record of discipline in his employment file. Dkt. No. 139-1 ¶¶ 46, 48, 49, 51, 53, 55. Defendants assert that these concerns prompted Ms. Rinaldo to engage an outside mentor for Plaintiff. Dkt. No. 133-1 ¶ 57.

Plaintiff complained that at least one person teaching special educations classes lacked a special education certificate. Dkt. No. 138 ¶ 38; Dkt. No. 142-11 ¶ 38. The parties dispute how many teachers Plaintiff complained about. *Compare* Dkt. No. 138 ¶ 38 *with* Dkt. No. 142-11 ¶ 38. According to David Potter, the Assistant Principal for the Pole Campus during Plaintiff's employment, Plaintiff discussed with him concerns about Defendants' failure to comply with students' Individualized Education Plans (IEPs) and concerns with program directors Ms. Waite and Ms. Stafford. Dkt. No. 138 ¶¶ 18, 41. Plaintiff also complained about the lack of certified

[2] The Court notes that to the extent that either party seeks an admission to "subjective beliefs and observations . . . [that party] would have been better served by stating objective facts underlying the paragraphs." *Tennyson v. Francemone*, No. 16-cv-929 (BKS/MJK), 2024 WL 3398364, at *2 (N.D.N.Y. July 12, 2024).

special education teachers, the lack of certified math teachers in the Career and Technical Education program, the fact that students attending the Therapeutic Learning Center program were not receiving required counseling as set forth in their IEPs, lack of 1:1 aid support, and abuse to students. *Id.* at ¶¶ 44–60. Defendants deny that any such violations existed. Dkt. No. 142-11 ¶¶ 44–60.

Defendants assert that in early December 2023, Ms. Stafford and Ms. Waite discussed with Ms. Rinaldo and Mr. Rullo a series of events which were of "high concern." Dkt. No. 133-1 ¶ 61. The parties agree that on December 5, 2023, at around 9:00 am, Plaintiff received a report that a student, T.S., stated "What would hypothetically happen if I brought a gun to school?" *Id.* at ¶ 62. Defendants assert that Defendants' policy and procedure required reasonable suspicion for an administrator to perform a search of a student, that this comment afforded reasonable suspicion, and that Plaintiff did not create a record that he conducted a search. *Id.* at ¶¶ 63–77. Plaintiff asserts that he, along with the school resource officer, brought the student to his office, where he was searched. Dkt. No. 138 ¶¶ 81–82.

Defendants also assert that Plaintiff mishandled a pill found in a BOCES bathroom on December 5, 2023, failed to preserve the capsule's contents, and failed to maintain control of part of the capsule itself to discard it. Dkt. No. 133-1 ¶¶ 81–88. Plaintiff asserts that the pill was not a controlled substance (but rather ADHD medication), that he gave half of the pill to the nurse for testing, and kept the other half locked in a safe. Dkt. No. 138 ¶ 79.

On December 5, 2023, an adult female student in Defendants' carpentry program, L.M., reported interactions with her instructor that could qualify as sexual harassment. Dkt. No. 133-1 ¶¶ 89, 90. Defendants assert that Plaintiff allowed Megan Scrivener, a school counselor, to question the student in an inappropriate manner, including questions about the student's religion,

whether she was prescribed psychiatric medications, and whether she was indeed taking the medications. *Id.* at ¶¶ 91–98. Plaintiff asserts that Ms. Stafford gave him permission to bring Ms. Scrivener, and Ms. Scrivener was never disciplined for her questioning. Dkt. No. 138 ¶¶ 83–90.

On December 7, 2023, Plaintiff asked for a meeting with the co-president of his union, Heather Montgomery, and met with her the next day. Dkt. No. 133-1 ¶¶ 105, 106. Either at this meeting or in subsequent communication before December 13, 2023, Plaintiff told Ms. Montgomery that he felt Defendants' administrators were targeting him. *Id.* at ¶ 109.

At some point (Defendants assert December 12 or 13, 2023), Mr. Rullo decided to place Plaintiff on administrative leave and recommended that his probationary employment be terminated based on information he received during a December 8 meeting (or in a subsequent communication prior to December 13) with Ms. Rinaldo, Deputy Superintendent Gallaher, Ms. Waite, and Ms. Stafford. *Id.* at ¶¶ 109, 111. Defendants assert that Mr. Rullo had already intended to recommend the termination of Plaintiff's employment as of December 13, 2023; Plaintiff asserts that Mr. Rullo could not confirm when he decided to place Plaintiff on administrative leave or terminate his employment. Dkt. No. 133-1 ¶ 111; Dkt. No. 139-1 ¶ 111. The parties also dispute whether Ms. Montgomery had notified Defendants' administrators about her prior meeting with Plaintiff, or any of Plaintiff's concerns. Dkt. No. 133-1 ¶ 114; Dkt. No. 139-1 ¶ 114.

During the December 13, 2023 meeting, Ms. Gallaher and Ms. Rinaldo gave Plaintiff two letters: the first notifying him that at a February 7, 2024 Board of Education meeting, a recommendation would be made that Plaintiff's probationary employment be terminated, and the second informing him that he was placed on administrative leave immediately. Dkt. No. 133-1 ¶ 115. Plaintiff asked for an explanation for his termination, and the reasons were not provided to him during that meeting. Dkt. No. 138 ¶ 72.

On December 14, 2023, Plaintiff sent a letter requesting a statement of the reasons for the recommendation to terminate his employment, and he received a letter with the purported reasons on December 21, 2023. Dkt. No. 133-1 ¶¶ 121, 123. Mr. Rullo stated that he did not conduct an independent investigation. Dkt. No. 138 ¶ 75. On January 11, 2024, Plaintiff provided a rebuttal to the statement of reasons letter. Dkt. No. 133-1 ¶ 125. On February 8, 2024, Defendants notified Plaintiff by letter that the Board of Education accepted the recommendation to terminate his employment, and he was terminated effective March 8, 2024. *Id.* at ¶¶ 126, 127. Defendants assert that the Board of Education voted to accept this recommendation unanimously. *Id.* at ¶ 128.

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is material if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*, 477 U.S. at 248).

Where, as here, both parties have filed motions for summary judgment, "the court must evaluate each party's motion on its own merits." *Heublein, Inc. v. U.S.*, 996 F.2d 1455, 1461 (2d Cir. 1993) (quoting *Schwabenbauer v. Bd. of Educ. of Olean*, 667 F.2d 305, 314 (2d Cir. 1981)). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The moving party may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (explaining that summary judgment is appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010))). If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). In ruling on a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

## IV. DISCUSSION

### A. ADA/RA - Retaliation

Defendants argue that Plaintiff has failed to establish a *prima facie* case of retaliation under the ADA or Rehabilitation Act, and that Defendants have articulated legitimate, nonretaliatory reasons for any and all actions that Plaintiff alleges were retaliatory. Dkt. No. 133-89 at 14–20.[3] Plaintiff argues that there is no genuine dispute of material fact, that he has established a *prima facie* case of retaliation, and that Defendants have not articulated any legitimate, nonretaliatory reasons for his termination. Dkt. No. 135-31 at 8–18.

Under the ADA, an employer cannot "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). A retaliation claim under the Rehabilitation Act of 1973 has the same standards as an ADA claim. *See Treglia v. Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (explaining that the Rehabilitation Act is "governed . . . by the same standards as the ADA") (citing 29 U.S.C. § 794(d); *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 148–49 (2d Cir. 2002) (elements of a retaliation claim under Rehabilitation Act are the same as the ADA)).

ADA retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 73–74 (2d Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973)); *see also Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) ("We analyze a retaliation claim under the

[3] Unless otherwise noted, citations to page numbers refer to pagination generated by the ECF system.

ADA using the same framework employed in Title VII cases."). Under this framework, the plaintiff bears the initial burden to establish a *prima facie* case of retaliation by showing evidence that: (1) he engaged in protected activity; (2) the defendant was aware of the activity; (3) the defendant took an adverse employment action against him; and (4) there is a causal connection between the protected activity and the adverse action. *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013). If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to demonstrate that a legitimate, non-retaliatory reason existed for its action. *Id.* at 129. If the employer demonstrates a legitimate, non-retaliatory reason for the adverse employment action, the burden shifts back to the plaintiff to show "that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

**a. *Prima Facie* Case**

**i. Protected Activity**

Plaintiff argues that he engaged in protected activity by advocating on behalf of disabled students. *See* Dkt. No. 135-31 at 9, 11–12; Dkt. No. 143 at 6. Defendants respond that Plaintiff did not engage in activity protected under the ADA because Plaintiff has only offered evidence of discussions and conversations, not formal complaints. *See* Dkt. No. 142 at 11–12.

The Court agrees with Plaintiff that advocating on behalf of disabled students constitutes protected activity under the ADA and the Rehabilitation Act. *See, e.g.*, *Volpe v. N.Y.C. Dep't of Educ.*, 195 F. Supp. 3d 582, 596 (S.D.N.Y. 2016) ("There is significant precedential support for the proposition that a non-disabled individual who files a complaint of disability discrimination is engaging in activity protected under the ADA. Moreover, it is clear that informal complaints to management are considered protected activity under the Rehabilitation Act and the ADA.") (cleaned up). Moreover, protected activities can include "'informal protests of discriminatory

employment practices, including making complaints to management' provided that they are 'sufficiently specific to make it clear that the employee is complaining about conduct prohibited'" by the ADA. *Jacobs v. Hudson Valley Fam. Physicians, PLLC*, 725 F. Supp. 3d 235, 247 (N.D.N.Y. 2024) (quoting *Arkorful v. N.Y.C. Dept. of Educ.*, 712 F. Supp. 3d 336, 356, (E.D.N.Y. 2024) (additional quotation omitted)). "'An employee's complaint may qualify as protected activity, satisfying [this] element of this test, so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'" *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 46 (2d Cir. 2025) (quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (per curiam) (citation and quotation marks omitted)).

On the one hand, viewing the facts in the light most favorable to Plaintiff, as required for Defendants' motion for summary judgment, there is sufficient evidence for a reasonable jury to credit Plaintiff's arguments that his actions qualified as protected activity, including his complaints to his supervisors, Ms. Waite and Ms. Stafford, regarding failure to follow students' IEPs, lack of counselors and certified special education teachers, and appropriate ratios of students to aides. However, when drawing all reasonable inferences in favor of Defendants, the Court cannot say that a reasonable fact-finder could not find in favor of Defendants' based on their arguments and proffered timeline. Accordingly, the Court concludes that neither party is entitled to summary judgment based on the question of whether Plaintiff's actions qualified as protected activity.

**ii. Awareness of Protected Activity**

Plaintiff argues that Defendants were aware of his protected activity. *See* Dkt. No. 135-31 at 12; Dkt. No. 143 at 5–6. Defendants respond that Plaintiff cannot establish this element with respect to his December 8, 2023 meeting with the co-president of Plaintiff's union, Ms.

Montgomery. *See* Dkt. No. 142 at 12.

"As to the second element [of the *prima facie* case], implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by [Title V]." *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122 (2d Cir. 2024) (quoting *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)). To satisfy this element, "[n]othing 'more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity.'" *Summa*, 708 F.3d at 125–26 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000)). "'[E]vidence that the specific decision-makers responsible for the adverse action were not aware of a plaintiff's protected activity is . . . relevant as some evidence of a lack of causal connection, countering plaintiff's circumstantial evidence of proximity. . . .'" *Costa v. Sears Home Imp. Prods., Inc.*, 65 F. Supp. 3d 333, 347–48 (W.D.N.Y. 2014) (quoting *Barney v. Consol. Edison Co. of N.Y.*, No. 99 Civ. 823, 2009 WL 6551494, at *13 (E.D.N.Y. Oct. 1, 2009), *aff'd*, 391 F. App'x 993 (2d Cir. 2010) (quotation omitted); *see also Gordon*, 232 F.3d at 117 ("The lack of knowledge on the part of particular individual agents is admissible as some evidence of a lack of a causal connection, countering plaintiff's circumstantial evidence of proximity . . . .") (emphasis omitted). "However, even if the decision-makers deny direct knowledge of a plaintiff's protected activity, a plaintiff can still establish a *prima facie* case where there is circumstantial evidence that the decision-makers were aware of the protected activity." *Costa*, 65 F. Supp. 3d at 348 (quoting *Barney*, 2009 WL 6551494, at *13).

Here, Defendants argue that Plaintiff cannot satisfy this element with respect to the December 8, 2023 meeting with Ms. Montgomery because the BOCES "administrators were unaware of the December 8, 2023 meeting" when they decided "to recommend Plaintiff's

termination." Dkt. No. 142 at 12. However, "for purposes of a prima facie case, a plaintiff may rely on 'general corporate knowledge' of her protected activity to establish the knowledge prong of the prima facie case." *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (citing *Gordon*, 232 F.3d at 116).

Accordingly, viewing the facts in the light most favorable to Plaintiff, as required for Defendants' motion for summary judgment, the record contains multiple instances that could support a jury's finding that Defendants had knowledge of Plaintiff's complaints (which have previously been determined to be a protected activity for the purposes of deciding these motions for summary judgment only), including statements by Defendants' Director of Special Education, Sara Stafford, *see* Dkt. No. 133-79, and Defendants' Coordinator of Curriculum and Staff Development, David Potter, *see* Dkt. No. 142-5. These statements are "sufficient to impute to [Defendants] general corporate knowledge of [Plaintiff's] protected activity." *Kwan*, 737 F.3d at 844 (citing *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (holding that a plaintiff's complaint to an officer of the company communicated her concerns to the company as a whole for purposes of the knowledge prong of the *prima facie* case)) (additional citation omitted). However, drawing all reasonable inferences in favor of Defendants, the Court cannot say that a reasonable fact-finder could not credit Defendants' version of the events as to whether or not they had knowledge of Plaintiff's complaints. Therefore, the Court cannot conclude that either party is entitled to summary judgment as to Defendants' awareness of any protected activity.

**iii. Adverse Action**

Plaintiff argues that he suffered adverse actions when he was placed on administrative

leave and terminated from his employment. Dkt. No. 135-31 at 7.[4]

For purposes of an ADA retaliation claim, "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (quoting *Burlington Northern v. White*, 548 U.S. 53, 57 (2006)). "This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII: '[T]he antiretaliation provision, unlike the substantive [discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment.'" *Id.* (quoting *Burlington Northern*, 548 U.S. at 64) (alterations in original). The Supreme Court has explained that it has:

> phrase[d] the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed."

*Burlington Northern*, 548 U.S. at 69 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81–82 (1998)). To determine "whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Hicks*, 593 F.3d at 165 (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006)). Specifically in the context of retaliation cases related to the ADA, an "adverse action" is "'any

---

[4] Neither Plaintiff nor Defendants specifically articulate their position on what constituted (or did not constitute) adverse actions for the retaliation analysis, nor the sufficiency of any adverse actions considered independently versus in the aggregate. To the extent either party made passing references to the adverse actions listed here, they are considered, but as a general matter, it is not the Court's duty to make a counseled party's case for them by scouring the record for potential adverse actions.

action that could well dissuade a reasonable worker from making or supporting a charge of discrimination,' and 'covers a broader range of conduct than does the adverse-action standard for claims of discrimination.'" *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 170 (2d Cir. 2024) (quoting *Vega*, 801 F.3d at 90).

Here, the incidents alleged by Plaintiff – his placement on administrative leave and his subsequent termination – if true, may independently amount to adverse actions. *See Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) ("Examples of materially adverse changes include termination of employment . . . ."); *Herrera v. Syracuse Univ.*, No. 24-cv-245 (AMN/ML), 2025 WL 874734, at *13 (N.D.N.Y. Mar. 20, 2025) ("[A]s a general matter, a reasonable worker could be dissuaded from filing [a charge of discrimination] if [ ]he was subjected to a negative performance review or 'termination' of the type described by Plaintiff."); *Winslow v. Pulaski Acad.*, 448 F. Supp. 3d 197, 208 (N.D.N.Y. 2020) ("Because Plaintiff has alleged two adverse employment actions in that [his] position was eliminated and that [he] was placed on administrative leave that materially altered the conditions of [his] employment, the Court finds that Plaintiff has satisfied the third element of [his] *prima facie* discrimination claim.") Accordingly, considering the alleged adverse actions, and viewing them in the light most favorable to the non-moving party, the Court cannot find that as a matter of law that they do not qualify as an adverse action that might dissuade a reasonable employee from making or supporting a charge of discrimination.

**iv. Causal Connection**

Plaintiff argues that "no reasonable jury could conclude that" he was terminated "for any reason but his complaints about the violations of students' IEPs." Dkt. No. 135-31 at 12. Defendants state that Plaintiff has failed to "adduce anything establishing, beyond genuine dispute, a causal relationship" between any "alleged reports and his termination." Dkt. No. 142 at 12.

"A causal connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Natofsky v. City of N.Y.*, 921 F.3d 337, 353 (2d Cir. 2019) (internal quotation marks omitted); *Cifra v. G.E. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of retaliation 'can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'") (quoting *Reed*, 95 F.3d at 1178); *see El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (recognizing that "[t]he temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under [Title V]").

"Where a plaintiff attempts to use temporal proximity to establish causation, the temporal proximity must be very close." *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 785 (S.D.N.Y. 2019) (cleaned up). "However, there is no 'bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between' the protected conduct and allegedly retaliatory action." *Id.* (quoting *Summa*, 708 F.3d at 128). "Consequently, although courts have found that, for example, a seven-month gap between the protected conduct and retaliatory action may be on its own . . . too attenuated to give rise to an inference of but-for causation, courts have also concluded that gaps of seven and eight months may support a sufficient temporal connection if accompanied by other indicia of retaliatory motive." *Id.* (internal quotations omitted) (citing, as examples, *Summa*, 708 F.3d at 128–29 ("In addition to the fact that seven months is within the temporal range that we have found sufficient to raise an inference of causation, the other surrounding circumstances—including [defendant's]

personal knowledge of the lawsuit when she decided to terminate the employment privileges and [defendant's] comment about insuring that graduate employees like [plaintiff] are able to 'be advocates for the University,' which [defendant] took as including litigation-related conflicts—are sufficient to allow an inference of causation here."); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir. 1980) (holding that eight months between protected conduct and retaliation was enough for *prima facie* retaliation claim)).

Although Defendants argue that Plaintiff cannot satisfy this element because there was a delay of three months or more between any protected conduct and an alleged retaliatory act, *see* Dkt. No. 142 at 13–14, their argument is not supported by the legal authority in this Circuit or the record. Defendants concede that there is no bright-line outer limit with respect to the temporal proximity requirement. *Id.* Moreover, courts in the Second Circuit examine what constitutes the *last* protected activity, and whether that is closely followed by the alleged retaliatory action. *See, e.g.*, *Harris v. City of N.Y. Dep't of Health & Mental Hygiene*, No. 24-cv-4348, 2026 WL 710201, at *15 n.22 (E.D.N.Y. Mar. 13, 2026) ("The Court notes that temporal proximity should be judged by . . . [a plaintiff's] last protected activity (for the retaliation claim).") (citing *Infantolino v. Joint Indus. Bd. of Elec. Indus.*, 582 F. Supp. 2d 351, 359 (E.D.N.Y. 2008) (measuring temporal proximity in ADA retaliation case as the time between the date that "plaintiff last engaged in protected activity" and the date of the alleged retaliation")); *see also Hensel v. City of Utica*, No. 15-cv-374 (LEK/TWD), 2020 WL 1451579, at *14 (N.D.N.Y. Mar. 25, 2020) ("While relying on temporal proximity to indirectly establish causation, 'the relevant date . . . is the date plaintiff last engaged in protected activity.'") (quoting *Infantolino*, 582 F. Supp. 2d at 359).

Here, Plaintiff has presented evidence of temporal proximity between his ongoing complaints of improper denial of services required for students with IEPs and the alleged adverse

actions. For example, Plaintiff alleges that the complaints he made closest in time to his termination were on October 30, 2023 and November 15, 2023, when he expressed concerns about failure to provide 1:1 aides, *see* Dkt. No. 135-22 at 212:1–8; Dkt. No. 135-28 at 33:11–34:9; Dkt. No. 135-8 at 6, as well as a meeting on December 8, 2023, when he reported additional concerns about staffing and compliance with IEPs, *see, e.g.*, Dkt. No. 135-22 at 110:21–114:13. Plaintiff was placed on administrative leave on December 13, 2023, only five days after his last alleged complaint, *see* Dkt. No. 135-5, and was terminated on February 7, 2024, *see* Dkt. No. 135-3, less than three months after his last alleged complaint. The Second Circuit has reasoned that timing within this range permits an inference of causality. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship."); *Summa*, 708 F.3d at 125 (finding causation where there was a seven-month gap between protected activity and adverse action); *Grant*, 622 F.2d at 45–46 (finding causation where there was an eight-month gap between protected activity and adverse action).

The Court finds that the timing of the potential retaliatory incidents, together with the context in which these incidents took place, is sufficient to establish a causal nexus for purposes of establishing a *prima facie* case of retaliation for the purposes of considering these motions for summary judgment. *See Summa*, 708 F.3d at 128 ("[T]he combination of reasonably close temporal proximity and the particular context in this case is sufficient to infer causation in establishing a *prima facie* case of retaliation regarding the termination of [plaintiff's] employment privileges . . . ."). Accordingly, Plaintiff has established a *prima facie* case of retaliation for the purposes of considering these motions for summary judgment, and a presumption of retaliation

arises.

**b. Legitimate, Non-Retaliatory Reasons**

The burden now shifts to Defendants to show a "legitimate, nondiscriminatory reason" for the adverse actions. *McDonnell Douglas*, 411 U.S. at 802. The burden "is not a particularly steep hurdle." *Hyek v. Field Support Servs., Inc.*, 702 F. Supp. 2d 84, 93 (E.D.N.Y. 2010). It "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

Defendants have satisfied their burden at this stage with evidence offering a legitimate, nondiscriminatory reason for Plaintiff's placement on administrative leave and subsequent termination. Specifically, Defendants have pointed to evidence that "Plaintiff failed to maintain control of a confiscated pill," Dkt. No. 133-89 at 14–15; Dkt. No. 133-75 at 108:3–12, "did not search a student who made a comment about bringing a gun to school," Dkt. No. 133-89 at 14–16; Dkt. No. 133-75 at 139, 142–43, "did not maintain appropriate control of the questions posed to an adult female student complaining of an instructor's behavior," Dkt. No. 133-89 at 15–17; Dkt. No. 133-36; Dkt. No. 133-75 at 138–30, and "routinely failed to timely complete the investigation portions of accident reports," Dkt. No. 133-89 at 15, 17; Dkt. No. 133-26; Dkt. No. 133-19 at 3.

The Court finds that Defendants have offered legitimate, nondiscriminatory reasons for the adverse actions complained of for the purposes of considering these motions for summary judgment, and the "presumption of retaliation [therefore] dissipates." *Ya-Chen Chen*, 805 F.3d at 70. The burden shifts back to Plaintiff to establish "that the desire to retaliate was the but-for cause of the challenged employment action." *Id*. (citation omitted).

**c. Pretext for Retaliation**

At the third stage of the *McDonnell Douglas* burden-shifting analysis, "a plaintiff alleging

retaliation must show that retaliation was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision." *Kwan*, *LLC*, 737 F.3d at 846–47 (quoting *Nassar*, 570 U.S. at 348, 360). "'[B]ut-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id*. at 846. "[A] plaintiff may rely on evidence comprising [his] *prima facie* case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at that stage." *Id*. at 847. Pretext may be shown, among other things, "by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate" nondiscriminatory reasons for its action. *Id*. at 846.

As stated above, despite Defendants' arguments, *see* Dkt. No. 133-89 at 19, Plaintiff has presented evidence of temporal proximity between his ongoing complaints of improper denial of services required for students with IEPs and the alleged adverse actions, making complaints as late as October 30, 2023 and November 15, 2023, when he expressed concerns about failure to provide 1:1 aides, *see* Dkt. No. 135-22 at 212:1–8; Dkt. No. 135-28 at 33:11–34:9; Dkt. No. 135-8 at 6, and December 8, 2023, when he reported additional concerns about staffing and compliance with IEPs, *see, e.g.*, Dkt. No. 135-22 at 110:21–114:13. On December 13, 2023, only five days after his last alleged complaint, Plaintiff was placed on administrative leave, *see* Dkt. No. 135-5, and was terminated on February 7, 2024, *see* Dkt. No. 135-3, less than three months after his last alleged complaint.

Furthermore, and contrary to Defendants' arguments, Dkt. No 133-89 at 18–19, Plaintiff does not rely solely on temporal proximity to support his claim. For example, Plaintiff offers evidence that before his complaints, he had no prior disciplinary record, *see* Dkt. No. 139 at 15,

Assistant Superintendent Rinaldo, who was in Plaintiff's chain of supervision, praised Plaintiff for his "everyday support" to "DCMO students and staff," Dkt. No. 135-6 at 2, and that Rinaldo had similarly praised him for his "willingness to grow and improve every day," *id.* "[T]he fact that 'evaluations of the plaintiff post-dating the protected activity contradict earlier evaluations' may serve as evidence of pretext." *Isasi v. Dep't of Educ. of the City of N.Y.*, No. 21 cv 3298, 2026 WL 2150180, at * 11 (E.D.N.Y. July 26, 2026) (quoting *Curcio v. Roosevelt Union Free Sch. Dist.*, No. 10-cv-05612, 2012 WL 3646935, at *15 (E.D.N.Y. Aug. 22, 2012) (in turn quoting *Ibok v. Securities Indus.*, 369 F. App'x 210, 213 (2d Cir. 2010))).

To be sure, if a jury credits the interpretation of the facts offered by Defendants – that Plaintiff submitted late accident report investigations, did not search a student who made a comment about bringing a gun to school, failed to maintain custody of a pill, and allegedly allowed inappropriate questions to be posed to an adult female student, *see, e.g.*, Dkt. No. 133-89 at 14–19; Dkt. No. 146 at 8–11, and Defendants conducted an independent investigation into Plaintiff's termination, *see* Dkt. No. 146 at 12 – the jury could reasonably find that Defendants' proffered reasons for Plaintiff's termination were not pretextual. On the other hand, "a reasonable juror could infer that the explanation given by" Defendants' employees for Plaintiff's termination "was pretextual, and that, coupled with the temporal proximity between the complaints and the termination, Plaintiff's complaints could be a but-for cause of his termination." *Kwan*, 737 F.3d at 847 (quotation marks omitted). Accordingly, granting summary judgment in favor of either party is improper.

Defendants raise another challenge to Plaintiff's claims: that the Board of Education made the decision to terminate Plaintiff, and "did not rely exclusively on information supplied by Ms. Stafford and Ms. Waite." Dkt. No. 146 at 12. However, a jury could reasonably conclude from

the facts in the record that Defendants credited "only th[at] information" provided by Ms. Stafford and Ms. Waite "in deciding to discontinue plaintiff's role—making [Defendants] a mere 'conduit'" of the retaliatory animus of others. *Isasi*, 2026 WL 2150180, at *12 (quoting *Edelman*, 141 F.4th at 50). Specifically, a reasonable jury could credit Plaintiff's position that prior to his termination, he had an "unblemished employment record," no prior disciplinary record, was well-liked and respected by staff, and weeks before his termination, Plaintiff was praised by Ms. Rinaldo for "his work and willingness to grow and improve" – all of which took place prior to a December 8, 2023 meeting between Mr. Rullo, Ms. Rinaldo, Deputy Superintendent Gallaher, Ms. Waite, and Ms. Stafford. Dkt. No. 139 at 15; Dkt. No. 133 ¶ 111.

In sum, given that there are numerous material factual disputes, both summary judgment motions are denied.

**B. Retaliation in Violation of Section 75-b of the New York Civil Service Law**

Defendants seek summary judgment on Plaintiff's state whistleblower claim under New York Civil Service Law § 75-b because the violations that Plaintiff allegedly complained of were "generally inaccurate" and not actually violations of any law. *See* Dkt. No. 133-89 at 23–26. Plaintiff responds that he has established a *prima facie* case for a violation of New York Civil Service Law § 75-b, and that he should receive summary judgment on this claim because the "record is undisputed that [Plaintiff] reported his concerns numerous times," "that Defendants were on notice of his concerns prior to the decision to terminate his employment," and that a "reasonable jury, based on this record, could not conclude that [Plaintiff's] termination is anything but [causally] related to his protected activity" *See* Dkt. No. 135-31 at 18–21. Defendants renew their arguments about why Plaintiff cannot establish but-for causation as a matter of law. Dkt. No. 142 at 22–27.

To state a claim under New York Civil Service Law § 75-b, a plaintiff must allege:

> [i] an adverse personnel action; [ii] disclosure of information to a governmental body (a) regarding a violation of a law, rule, or regulation that endangers public health or safety, or (b) which [ ]he reasonably believes to be true and which [ ]he reasonably believes constitutes an improper governmental action; and [iii] a causal connection between the disclosure and the adverse personnel action.

*Burns v. Cook*, 458 F. Supp. 2d 29, 44 (N.D.N.Y. 2006).

Plaintiff has satisfied the element of an adverse personnel action. "Personnel action" in this context is defined as "an action affecting compensation, appointment, promotion, transfer, assignment, reassignment, reinstatement or evaluation of performance," N.Y. Civ. Serv. Law § 75-b(1)(d), and Plaintiff's termination of his employment resulted in a loss of compensation. Solely for the purposes of Defendants' motion for summary judgment, the Court finds that Plaintiff has presented sufficient evidence to create a genuine dispute of material fact as to whether he believed he was disclosing improper governmental action. *See, e.g.*, *Jones v. Town of Whitehall*, No. 13-cv-806 (LEK/CFH), 2015 WL 4603511, at *9 (N.D.N.Y. July 30, 2015) ("§ 75-b is a remedial statute and does not require an actual violation of a law, rule, or regulation, as long as the plaintiff had a reasonable belief that the reported actions were illegal.") (internal citation omitted). Finally, "to satisfy the causation element for a § 75-b claim, a public employee must establish that 'but for' the protected activity, the adverse personnel action by the public employer would not have occurred." *Id.* at *9 (quoting N.Y. Civ. Serv. Law § 75-b(3)(a)). For the same reasons as stated above, viewing the evidence in the light most favorable to Plaintiff, a reasonable juror could find that there is but-for causation between Plaintiff's complaints and the adverse personnel action and, on the other hand, viewing the evidence in the light most favorable to Defendants, a reasonable juror could find that there is not but-for causation between Plaintiff's complaints and the adverse

personnel action. Therefore, both Plaintiff's and Defendants' summary judgment motions are denied as to the claim under New York Civil Service Law § 75-b.

### C. Limiting Plaintiff's Recovery

#### a. Failure to Reasonably Mitigate Damages

Defendants seek summary judgment dismissing Plaintiff's claims for "any lost wages or benefits" because Defendants assert that when Plaintiff applied for a LaFayette School District position in February 2024, he misrepresented his employment history and, at that time, he was still receiving pay and benefits. Dkt. No. 133-89 at 20–21. Plaintiff responds that his failure to obtain employment with the LaFayette School District "does not prove that [ ] Plaintiff failed to make reasonable efforts to secure suitable employment after his termination," that Defendants misrepresented the record, and that Defendants' subpoena to the LaFayette School District violated prior Court orders. *See* Dkt. No. 139 at 23–28.

"Courts have the power to separate the issues of liability and damages and grant summary judgment as to either." *Cardwell v. Davis Polk & Wardwell LLP*, No. 19-cv-10256, 2023 WL 2049800, at *37 (S.D.N.Y. Feb. 16, 2023) (citing *Howe v. Bank of N.Y. Mellon*, 783 F. Supp. 2d 466, 472 (S.D.N.Y. 2011)); *see also* Fed. R. Civ. P. 56(g) ("If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case.").

"A plaintiff alleging employment discrimination has a duty to mitigate damages." *Astrin v. Maharam Fabric Corp.*, No. 11-cv-4482, 2013 WL 3149462, at *1 (E.D.N.Y. Jun. 19, 2013). "An employer seeking to avoid a lost wages award bears the burden of demonstrating that a plaintiff has failed to mitigate." *Id.* (citing *Bergerson v. N.Y. State Off. of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 526 F. App'x 109, 111 (2d Cir. 2013) (summary order)) (additional citation

omitted). "'This may be done by establishing (1) that suitable work existed, and (2) that the employee did not make reasonable efforts to obtain it.'" *Id.* (quoting *Bergerson*, 526 F. App'x at 111). In addition, "an employer 'is released from the duty to establish the availability of comparable employment if it can prove that the employee made no reasonable efforts to seek such employment.'" *Id.* (quoting *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998)).

The parties agree that in February 2024, Plaintiff sought employment with the LaFayette Central School District. *See* Dkt. No. 133-89 at 20; Dkt. No. 139 at 24. However, Defendants present only the conclusory argument that Plaintiff "affirmatively misrepresent[ed]" that he had never been discharged or asked to resign from a position, and that when the LaFayette Central School District "discovered he had been terminated by Defendants, it ceased considering him for its position" – stating that Plaintiff "blew his opportunity to obtain the position by misrepresenting his employment history." Dkt. No. 133-89 at 20–21. Plaintiff responds that the certified Background Information submitted to the LaFayette Central School District as part of his employment application was signed and certified by Plaintiff on March 20, 2021, three years before he applied for that position, and that this document was "forwarded, without his knowledge, by the [relevant] system." Dkt. No. 139 at 24–25. Plaintiff also argues that he applied for 72 positions between January 2024 (after he received notice that he would be terminated by Defendants) and June 11, 2024, when he obtained a position as an elementary education principal, and that a jury could rely on the evidence to find that his six-month job search was diligent. *Id.* at 26. Plaintiff argues further that there are evidentiary issues regarding the alleged false statement, including the fact that it is inadmissible under the collateral evidence doctrine prohibiting the use of extrinsic evidence for impeachment purposes. *Id.* at 26–27.

Defendants are correct that Plaintiff has an obligation to make reasonable efforts to mitigate his damages. However, the cases that Defendants cite to are distinguishable from this case. *See, e.g.*, *Astrin*, 2013 WL 3149462, at *1 (a decision on a motion *in limine* seeking to preclude a plaintiff from presenting evidence with respect to wages); *Sands v. Runyon*, 28 F.3d 1323, 1326 (2d Cir. 1994) (reviewing a district court's ruling that involved, among other issues, an entry of a final award to a plaintiff after discovery was closed and an evidentiary hearing was held); *Greenway*, 143 F.3d at 49 (reviewing a jury's award of damages to a plaintiff); *Dailey v. Societe Generale*, 108 F.3d 451, 455 (2d Cir. 1997) (reviewing a jury's finding that plaintiff had made a sufficient effort to mitigate damages). Given the totality of the circumstances here, at this stage of the litigation and on this record, without making any evaluation as to the merits, Defendants have not established that they are entitled to summary judgment on this issue because even if Defendants can overcome Plaintiff's evidentiary objections, the evidence identified by Plaintiff is sufficient to create a disputed material fact about the threshold question of whether Plaintiff knew of or directed the use of the certified Background Information submitted to the LaFayette Central School District as part of his employment application in February 2024.

**b. Limiting Recovery Pursuant to the After-Acquired Evidence Doctrine**

Relying on the after-acquired evidence doctrine, Defendants move for summary judgment to limit Plaintiff's recovery for lost earnings and benefits relying on their assertion that in January 2024 they "discovered a number of incomplete accident reports, going back months." *See* Dkt. No. 133-89 at 22. Plaintiff responds that this doctrine is inapplicable because "Defendants already knew about [the accident reports in dispute] during the course of his employment but simply failed to raise [them] as a justification for termination." *See* Dkt. No. 139 at 28.

Under the after-acquired evidence doctrine, "'evidence that the employee would have been terminated for lawful reasons will make certain remedies, such as reinstatement and front pay, unavailable.'" *Schoenadel v. YouGov Am. Inc.*, No. 22-cv-10236, 2025 WL 371089, at *12 (S.D.N.Y. Feb. 3, 2025) (quoting *Greene v. Coach, Inc.*, 218 F. Supp. 2d 404, 412 (S.D.N.Y. 2002) (citing *McKennon v. Nashville Banner Pub'g Co.*, 513 U.S. 352, 361 (1995))). Furthermore, back pay remedies may "be limited to salary lost from the date of the unlawful discharge until the date the employer discovered the information which would have led to discharge on lawful grounds." *Flores v. Buy Buy Baby, Inc.*, 118 F. Supp. 2d 425, 432–33 (S.D.N.Y. 2000) (citing *McKennon*, 513 U.S. at 361–62). "'In order to rely on the after-acquired evidence doctrine, an employer must establish that the wrongdoing was of such severity that the employee would have been terminated on such grounds alone if the employer had known of it at the time of discharge.'" *Shoenadel*, 2025 WL 371089, at *12 (quoting *Greene*, 218 F. Supp. 2d at 412). "Summary judgment on this issue 'is inappropriate' where the plaintiff 'raise[s] a material issue of fact as to whether the after-acquired evidence would actually be a basis for termination.'" *Id.* (quoting *Smith v. Tuckahoe Union Free Sch. Dist.*, No. 03 Civ. 7951, 2009 WL 3170302, at *12 (S.D.N.Y. Sept. 30, 2009)) (alteration in original).

Viewing the evidence in the light most favorable to Plaintiff, as required for Defendants' summary judgment motion on this issue, a reasonable jury could credit Plaintiff's evidence that that he did not cause the alleged delays in completing the accident reports because he had no deadline to do so, that not all delayed accident reports were assigned to Plaintiff, and that Human Resources, not Plaintiff, was ultimately responsible for the completion of accident reports. *See* Dkt. No. 139 at 20, 21, 28; *see also* Dkt. No. 135-17; Dkt. No. 133-76 at 108:10–109:11, 220:11–221:8. Therefore, Defendants' motion for summary judgment on this basis is denied.

## V. CONCLUSION

For these reasons, it is

**ORDERED** that Defendants' motion for summary judgment, Dkt. No. 133, is **DENIED**, and it is further

**ORDERED** that Plaintiff's motion for summary judgment, Dkt. No. 135, is **DENIED**, and it is further

**ORDERED** that Plaintiff's claims under Title V of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C § 794, and Section 75-b of the New York Civil Service Law, shall proceed to trial.

Dated: September 29, 2026

Elizabeth C. Coombe
U.S. District Judge